IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JAIME A. DÍAZ-O'NEILL,<br><br>Plaintiff,<br><br>v.<br><br>PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, GLORIMAR CHICLANA-OCASIO, DORIEL I. PAGÁN-CRESPO, EDWIN RIVERA-CARDONA, RAQUEL MATOS-ROLÓN AND AINEZ MEDINA-RESTO,<br><br>Defendants. | CIV. NO.: 22-1024 (SCC) |

**OMNIBUS OPINION AND ORDER**

Plaintiff Jaime A. Díaz O'Neill, *pro se*,[1] filed suit against the Puerto Rico Aqueduct and Sewer Authority ("PRASA") and Glorimar Chiclana-Ocasio, Doriel I. Pagán-Crespo, Edwin

---

[1] The Court granted Plaintiff Díaz-O'Neill's request for the appointment of *pro bono* counsel. *See* Docket Nos. 3 and 6. Two (2) *pro bono* counsels were appointed to represent Plaintiff Díaz-O'Neill, however, the first asked to withdraw because she was no longer actively litigating, and the second asked to withdraw after Plaintiff Díaz-O'Neill stated that he did not want him to be his legal representative. *See* Docket Nos. 10 and 16. The Court granted both requests. *See* Docket Nos. 17 and 19. After the Court granted the second motion to withdraw, Plaintiff Díaz-O'Neill was ordered to clarify if he would be moving forward with his case as a *pro se* litigant. *See* Docket No. 19. Plaintiff Díaz-O'Neill did not directly respond to the Court's order. He did, however, proceed to file motions *pro se*. The Court interpreted his actions as indicative of his intent to litigate this matter *pro se*. To date, he has not renewed his request for the appointment of new *pro bono* counsel, and he continues to file all his motions *pro se*.

Rivera-Cardona, Raquel Matos-Rolón and Ainez Medina-Resto, in both their official and individual capacities. *See* Docket No. 2. The Co-defendants, except for Ms. Chiclana-Ocasio, who was never served with process, moved for the dismissal of this case for lack of subject-matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. *See* Docket No. 25.

For the reasons set forth below, this case will be dismissed without prejudice.

**I. Discussion**

    **a. Motion to Deem Motion to Dismiss as Unopposed**

Before substantively addressing the pending Motion to Dismiss, the Court must rule on the Co-defendants' motion requesting that their Motion to Dismiss be deemed unopposed. *See* Docket No. 32. Here, the record shows that once the Co-defendants filed their Motion to Dismiss, Plaintiff Díaz-O'Neill filed a timely motion for an extension of time to respond to that motion. Docket No. 27. The Court granted that request. *See* Docket No. 29. But instead of filing his response, Plaintiff Díaz-O'Neill opted to file a request for the undersigned to recuse

herself from this case. Docket No. 31.[2] The motion was devoid of any mention whatsoever of the pending Motion to Dismiss. Once Plaintiff Díaz-O'Neill's time to respond to the Motion to Dismiss elapsed, the Co-defendants moved the Court to deem the Motion to Dismiss as unopposed. Docket No. 32.

Nevertheless, considering Plaintiff Díaz-O'Neill's *pro se* status, the Court entered an order directing him to show cause as to why the Co-defendants' Motion to Dismiss should not be deemed unopposed. *See* Docket No. 43. Plaintiff Díaz-O'Neill then moved for an extension of time to respond. *See* Docket No. 47. And the Court granted that request and granted Plaintiff Díaz-O'Neill a final term to comply with the Court's order to show cause. *See* Docket No. 48. In response to that second order,

---

[2] In that motion, Plaintiff Díaz-O'Neill repeatedly accused the undersigned of making it impossible for him to effect service on Ms. Chiclana-Ocasio. The Court rejects Plaintiff Díaz-O'Neill's accusation. The U.S. Marshals Service attempted to serve Ms. Chiclana-Ocasio with process on two occasions to no avail. *See* Docket No. 12. The Process receipt shows that on the second attempt to serve her with process, the U.S. Marshal was informed that Ms. Chiclana-Ocasio no longer worked at the address that Plaintiff Díaz-O'Neill had included in the summons. *Id.* Instead of submitting a motion requesting the issuance of new summons with Ms. Chiclana-Ocasio's new work address, which the record shows he knew since at least April 13, 2022, *see* Docket No. 31, Plaintiff Díaz-O'Neill opted to file a blitzkrieg of baseless motions requesting the undersigned to recuse herself from this case and/or that the case be transferred to another district. *See* Docket Nos. 34 – 40. The record clearly shows that the Court informed Plaintiff Díaz-O'Neill that Ms. Chiclana-Ocasio could be served with process at her new work address. *See* Docket No. 41. But to date, he has failed to do so.

Plaintiff Díaz-O'Neill filed what he identified as a "Motion in Compliance." *See* Docket No. 49. While the Court noted the Motion in Compliance, it concluded that it was nonresponsive. *See* Docket No. 57.

The record confirms that Plaintiff Díaz-O'Neill was afforded plenty of time to respond to the Motion to Dismiss. He chose not to do so and therefore the Court **GRANTS** the motion at Docket Number 32 and deems the Motion to Dismiss as unopposed.

## b. Motion to Dismiss

### i. Background

Plaintiff Díaz-O'Neill's Complaint does not provide much factual background. But from what this Court understands, Plaintiff Díaz-O'Neill was dismissed[3] from PRASA, at some point in 2004, due to what he describes was a "manufactured process" before PRASA's Human Resources Department. He then took his case before the Puerto Rico Labor Relations Board ("PRLRB") and, he claims, the PRLRB ruled in his favor.[4] Then,

---

[3] Plaintiff Díaz-O'Neill does not say outright that he was fired from PRASA. But the Court concludes, in view of the relief sought (to be reinstated to his job), that the event that took place in 2004 resulted in his dismissal from PRASA.

[4] The Complaint does not shed light on the type of relief that Plaintiff Díaz-O'Neill sought from the PRLRB. By the same token, the Complaint remains

he alleges, the Puerto Rico Court of Appeals issued an amended resolution instructing that he be reinstated to his job at PRASA. He further contends that the Co-defendants were notified of the amended resolution, but they have refused to comply with it, thereby depriving him of a host of "rights," including, *inter alia*, his constitutional rights[5] and certain benefits, such as his "right to contribute" to his social security, retirement and his right to a pension. *See* Docket No. 1 at pg. 7. He now asks this Court to "order" his immediate reinstatement to PRASA along "with all the rights inherent to" his reinstatement. *Id.* at 8.

### ii. ANALYSIS

"It goes without saying—but we say it anyway—that federal courts are courts of limited jurisdiction, limited to deciding certain cases and controversies[.]" *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 21 (1st Cir. 2016). Therefore, while the Co-defendants have advanced two separate grounds in support of their request for dismissal, the Court's analysis begins with subject-matter jurisdiction "[b]ecause federal courts are

---

silent as to the relief granted by the PRLRB when it purportedly ruled in his favor.

[5] Plaintiff Díaz-O'Neill does not specify in his Complaint if he is being deprived of his constitutional rights under the Puerto Rico and/or the United States constitution.

DÍAZ-O'NEILL v. PRASA                                                                    Page 6

powerless to act in the absence of subject matter jurisdiction[.]" *See Espinal-Domínguez v. Puerto Rico,* 352 F.3d 490, 495 (1st Cir. 2003). And although Rule 12(b)(1) motions are "conceptually distinct" from Rule 12(b)(6) motions, "the same basic principles apply in both situations." *Lyman v. Baker,* 954 F.3d 351, 359 (1st Cir. 2020).[6] Therefore, to determine if this Court has subject-matter jurisdiction to hear Plaintiff Díaz-O'Neill's complaint, "the well-pleaded facts must be taken as true and viewed in the light most favorable to the plaintiff, and all reasonable inferences from those facts must be drawn in the plaintiff's favor." *Marasco & Nesselbush, LLP v. Collins,* 6 F.4th 150, 166 (1st Cir. 2021). The Court's analysis is conducted bearing in mind that Plaintiff Díaz-O'Neill bears the burden of establishing this Court's jurisdiction. *See Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64 (1st Cir. 2018) (noting that "a plaintiff who seeks to bring [his] suit in a federal forum bears the burden of establishing that the federal court has subject-matter jurisdiction.").

---

[6] If a Rule 12(b)(1) motion "contests factual allegations of the complaint, the court must engage in judicial factfinding to resolve the merits of the jurisdiction claim." *Marascov & Nesselbush, LLP v. Collins,* 6 F.4th 150, 166 n. 19 (1st Cir. 2021). The Co-defendants have not advanced such a challenge in their Motion to Dismiss. Accordingly, the Court, favorably to Plaintiff Díaz-O'Neill, has read the Co-defendants' Motion to Dismiss as raising a facial challenge.

In *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743 (2019), the Supreme Court summarized the "jurisdictional grants" that open the door to federal jurisdiction by stating that, "[i]n 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, §1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)." *Id.* at 1746. The *Jackson* Court added that "[t]hese jurisdictional grants are known as 'federal-question jurisdiction' and 'diversity jurisdiction,' respectively." *Id*. Only the former is relevant to the Court's analysis here since Plaintiff Díaz-O'Neill's Complaint solely mentions that the same raises a "federal question" and after having evaluated all four corners of the Complaint, the Court concludes that there is no indication that diversity jurisdiction was asserted.[7]

It is the Court's understanding that, ultimately, what Plaintiff Díaz-O'Neill seeks in his Complaint is the enforcement of the amended resolution issued by the Puerto Rico Court of Appeals, so that he can be reinstated to his job at PRASA.[8] It is

---

[7] Most fundamentally, it appears that the Parties are not diverse.

[8] Plaintiff Díaz-O'Neill does not specify if the amended resolution orders that he be reinstated to his old job or just to any job available at PRASA.

unclear if the amended resolution is a final judgment. [9] But considering the way that Plaintiff Díaz-O'Neill refers to it throughout the Complaint, it appears he certainly believes that it is a final judgment. Thus, drawing all reasonable inferences in favor of Plaintiff Díaz-O'Neill, the Court will treat the amended resolution as a final judgment.

By asking the Court to enforce the amended resolution, Plaintiff Díaz-O'Neill is essentially invoking the Full Faith and Credit Clause. Indeed, the First Circuit has stated that "[f]ederal courts are required to give full faith and credit to a final judgment issued by a court of the Commonwealth of Puerto Rico." *Barreto-Rosa v. Varona-Méndez*, 470 F.3d 42, 45 (1st Cir. 2006). However, "the Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action." *Thompson v. Thompson*, 484 U.S. 174, 182 (1988). Therefore, merely asking that the amended

---

[9] To the Court's knowledge, no discovery has been conducted in this case. And this is to be expected, considering the stage of the proceedings. However, it does not go unnoticed that Plaintiff Díaz-O'Neill did not include a copy of the purported amended resolution or cite to the Puerto Rico Court of Appeals case number relating to that case. So while the Court accepts Plaintiff Díaz-O'Neill's representations as true, as the Court must do at this stage, such information and documentation should be readily available to a plaintiff who has purportedly been litigating the issues at stake for almost twenty (20) years.

| DÍAZ-O'NEILL v. PRASA | Page 9 |
|---|---|

resolution be enforced is not enough to supply the basis for federal subject-matter jurisdiction here. And because Plaintiff Díaz-O'Neill did not allege that the issues adjudicated or raised in the amended resolution are rooted in federal law, for his Complaint to survive the Co-defendants' Motion to Dismiss, he must have included an independent showing of federal jurisdiction.[10] A look at the Complaint shows that Plaintiff Díaz-O'Neill failed to do so.

In his Complaint, under the "Basis for Jurisdiction" section, Plaintiff Díaz-O'Neill marked the "federal question" box. Under that box, he then included the following list of what he identified as his federal causes of action: (1) Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132; (2) Labor Management Relations; (3) Other Labor Litigations; (4) Other Civil Rights; (5) Other Personal Property; (6) Social Security; (7) Constitutional Rights; and (8) Damages. The Complaint, however, is devoid of factual allegations that would

---

[10] *See, e.g., Vera v. Republic of Cuba*, 867 F.3d 310, 320 (2d Cir. 2017) (expressing that "the Full Faith and Credit Act, which requires state court judgments to receive the same credit, validity, and effect in every other court in the United States, 28 U.S.C. § 1738, has no bearing on the question of whether a district court has subject matter jurisdiction to hear them."); *Endocare, Inc. v. Technologias Urologicas, Inc.*, 950 F. Supp. 2d 341, 344 (D.P.R. 2013) (recognizing a district court's authority to enforce a state-court judgment when exercising diversity jurisdiction).

support those causes of action and, more importantly, supply the basis for federal question jurisdiction.

In their Motion to Dismiss, the Co-defendants argue that the above listed causes of action and the factual allegations included in the Complaint are so general that they fail to satisfy § 1331's "arising under the Constitution, laws, or treaties of the United States," requirement. 28 U.S.C. § 1331. As the Co-defendants point out in their Motion to Dismiss, the only federal statute that Plaintiff Díaz-O'Neill cited to in his Complaint was 29 U.S.C. § 1132, ERISA's civil enforcement provision. Indeed, "[s]uits brought under ERISA are federal questions for the purposes of federal court jurisdiction." *Alexandre v. Nat'l Union Fire Ins. Co.,* 22 F.4th 261, 269 (1st Cir. 2022). However, even when a federal statute is invoked, the Court must tread carefully, because it could very well be that the purported federal claim is completely devoid of merit such that dismissal for lack of subject-matter jurisdiction is warranted. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of

merit as not to involve a federal controversy.'" (quoting *Oneida Indian Nation of N.Y. v. Cnty. of Oneida,* 414 U.S. 661, 666 (1974))). The Court finds that such is the case with the purported federal causes of action that Plaintiff Díaz-O'Neill included in his Complaint.

In his Complaint, Plaintiff Díaz-O'Neill mentions § 1132 of ERISA. But merely mentioning § 1132 and ERISA, followed by conclusory statements to the effect that he, *inter alia*, has a "right to a pension" and "to contribute to [his] retirement," are not enough to establish the existence of federal subject-matter jurisdiction. The Complaint does not include facts or developed arguments that would indicate the existence of a federal controversy. Moreover, "[u]nder ERISA's statutory scheme, ERISA claimants must establish, as a prerequisite to jurisdiction, that their agreement is a 'plan'." *Nash v. Trs. of Bos. Univ.,* 946 F.2d 960, 963 n.7 (1st Cir. 1991). When the Court turns to the definition provided for "plan" under ERISA, the same states that "the term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). In turn, an "employee welfare benefit plan" is defined, in

pertinent part, as:

> any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or an employee organization, or by both, to the extent that such plan, fund, or program was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise.

29 U.S.C. § 1002(1). For its part, an "employee pension benefit plan," is defined, in pertinent part, as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program – (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A). Here, the Complaint remains completely silent as to the existence of an ERISA qualified "plan"—whether it be an employee welfare benefit plan or an employee pension benefit plan—that was established or maintained by PRASA to benefit Plaintiff Díaz-O'Neill. This follows that, because he has not alleged that there is an ERISA covered plan at play and there are not enough facts for the Court to make that

inference, there is no federal controversy. And while no other federal statute was invoked, Plaintiff Díaz-O'Neill's list of seven other alleged federal causes action coupled with the conclusory assertions that he is entitled to, *inter alia*, a pension, social security benefits and the equal protection of the laws, are too devoid of detail to show that a federal controversy is before this Court. In short, Plaintiff Díaz-O'Neill has failed to give this Court enough information to know whether a federal controversy is present here.

Lastly, the Co-defendants also moved for dismissal pursuant to Rule 12(b)(6) on the ground that Plaintiff Díaz-O'Neill has failed to state a claim for relief under ERISA. The Co-defendants only addressed ERISA due to their understanding that Plaintiff Díaz-O'Neill's Complaint does not include sufficient factual allegations that would allow them to substantively address the additional purported federal causes of action that were asserted therein. Docket No. 11 at pg. 11 n. 6. Therefore, the Co-defendants reserved the right to file a separate dispositive motion addressing those seven grounds, if need be. *Id.*

Subject-matter jurisdiction presents a threshold question, and as the Court's analysis shows, Plaintiff Díaz-O'Neill failed to meet his burden to show that this Court has it. In any event, the Co-defendants' second ground for dismissal also succeeds because Plaintiff Díaz-O'Neill's Complaint is riddled with conclusory allegations that do not plausibly show that his Complaint involves an ERISA covered plan. Therefore, even if Plaintiff Díaz-O'Neill were to have had established this Court's jurisdiction, the road would still lead to dismissal because his Complaint fails to state a claim under ERISA. Furthermore, the remaining seven causes of action also suffer the same fate since Plaintiff Díaz-O'Neill merely included them in a laundry list fashion and followed them up with conclusory assertions that he has been deprived of numerous rights. *See* Docket No. 2 at pg. 7. The Court does not find that such generalized and conclusory statements satisfy Federal Rule of Civil Procedure 8(a)'s pleading standard and therefore do not state a claim for which relief can be granted.[11]

---

[11] The Co-defendants' Motion to Dismiss did not squarely address the additional seven causes of action. Nevertheless, the Motion to Dismiss did put Plaintiff Díaz-O'Neill on notice as to his defective pleading. Plaintiff Díaz-O'Neill, however, after being afforded the opportunity to do so, did not respond to the Motion to Dismiss.

The Court is mindful of Plaintiff Díaz-O'Neill's *pro se* status. Bearing that in mind, the Court liberally construed all of Plaintiff Díaz-O'Neill's filings in this case. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75-76 (1st Cir. 2014). But even after doing so, the Court finds that he did not establish a cognizable basis for federal subject-matter jurisdiction. In his Complaint Plaintiff Díaz-O'Neill has listed eight purported federal causes of action in a general fashion and added conclusory allegations in support of his contention that the failure to enforce the amended resolution has resulted in his inability to, *inter alia*, "contribute to [his] social security," his right to "equal protection," and his "right to contribute to the federal government." These conclusory statements are not enough to establish this Court's subject-matter jurisdiction and they also fail to spell out a plausible claim for which relief can be afforded to Plaintiff Díaz-O'Neill. Accordingly, the Co-defendants' Motion to Dismiss is **GRANTED.**

### I.  Conclusion

In view of the above, the Court **GRANTS** the motion at Docket Number 32, deems the Motion to Dismiss as unopposed and **GRANTS** the Motion to Dismiss at Docket No. 25. This case is hereby **DISMISSED WITHOUT PREJUDICE**.[12]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of December 2022.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES DISTRICT COURT JUDGE

---

[12] As mentioned, Ms. Chiclana-Ocasio was not served with process and, understandably, did not join the Co-defendants' Motion to Dismiss or file her own Motion to Dismiss. However, the Court finds that dismissal is also warranted as to all claims against her since she is in the same situation (allegation wise) as the Co-defendants and because the Court has determined that it lacks subject-matter jurisdiction to hear Plaintiff Díaz-O'Neill's case. *See* FED. R. CIV. P. 12(h)(3).